**A. A. WOLLMAN, Jr., Plaintiff,**

v.

**Homer S. HEAD and Adler Edmiston,
Defendants.**

**Civ. A. No. 10944.**

United States District Court
S. D. Texas,
Houston Division.
Aug. 5, 1958.

564

C. O. Ryan and Thomas M. Ryan, Houston, Tex., for plaintiff A. A. Wollman, Jr.

Bryan, Suhr & Bering and James P. Bailey, Houston, Tex., for defendant Homer S. Head.

Price, Guinn, Veltmann & Skelton, G. E. Veltmann, Houston, Tex., for defendant Adler Edmiston.

CONNALLY, District Judge.

This is an action to recover upon a promissory note, or upon the original obligation, to evidence which the note was executed. Plaintiff A. A. Wollman, Jr. is a citizen of the State of South Dakota. The two defendants, Adler Edmiston and Homer S. Head, are citizens of this State. The amount in controversy is well in excess of the jurisdictional requirement.

The plaintiff Wollman is a dentist by profession, who from time to time speculates in oil and gas ventures. The two defendants are engaged in the oil and gas business and, with one Butterfield, entered into an agreement with the plaintiff in undertaking to bring a particular oil well into production. Admittedly, the plaintiff advanced the $50,000, which it was estimated would be required, and these funds were spent in an unsuccessful attempt to make the well produce. He now seeks to recover the amount of this outlay. The defendants contend (a) that there was no agreement or obligation on their part to repay, and that plaintiff was only to recoup his expense in the event the well produced; and (b) alternatively, that if the plaintiff was to be repaid in the event the well was unsuccessful, the agreement was that he was to look only to a particular source.

The defendant Edmiston was acquainted with the fact that the well in question had been drilled upon an oil and gas lease belonging to other parties. Edmiston thought the well had promise. The lessee, however, was unwilling to spend the money necessary to clean and test the well. The lease would terminate shortly unless further efforts were made to bring the well into production. Hence, the lessee offered to assign the lease to Edmiston, reserving a fractional interest in himself, if Edmiston would secure the funds necessary to, and proceed with, the cleaning and testing operation, with the view of securing production. Little time remained within which this might be undertaken. Edmiston interested Head and Butterfield in the venture, and the three agreed to share equally in the profits.

These three (Edmiston, Head and Butterfield) were unable, or unwilling, personally to advance the $50,000, which it was estimated would be required for the operation. Butterfield was well acquainted with Wollman, to whom he had taken a number of earlier proposals, to their mutual benefit. He contacted Wollman and made an agreement to meet with him.

Wollman met with Butterfield first in Mineral Wells, Texas. At that time, Butterfield explained the undertaking to Wollman, and gave him a written memoranda (Ex. 1), setting forth the terms of the proposal. Wollman then proceeded to Houston, Texas, where he discussed the proposal at length with Edmiston. One of the meetings between Wollman and Edmiston was at Head's office on March 10, 1953. Head was absent, but had left a letter (Ex. 2) indicating his understanding of and acquiescence in the agreement.

Throughout, the parties appear to have acted without the benefit of legal advice. The instruments evidencing the agreement were of their own composition. At the meeting in Head's office, March 10, 1953, Edmiston prepared and signed a "Memorandum of Agreement", wherein he, undertaking to act as agent for But-

terfield and Head (as well as on his own behalf), and designating himself "Trustee for Gordon B. Butterfield, Homer S. Head, and Adler Edmiston", set out the agreement with Wollman (Ex. 3). While reference is made to this instrument for all of its terms, in substance it provided that Wollman would advance the $50,000; that the oil runs from the completed well would be retained until $50,000 had been impounded; that first party (Edmiston, et al.) contemporaneously had executed a promissory note in Wollman's favor, due in 9 months, and bearing interest at 2%, to reimburse Wollman for his advance; and that these monies impounded from the first production should apply on said note until it had been paid in full. Thereafter, that portion of the working interest which Edmiston had acquired, as above stated, was to be divided ½ to Wollman, and the remaining ½ equally between Head, Butterfield and Edmiston.

In addition to the "Memorandum of Agreement", plaintiff has offered the note just referred to (Ex. 4). It is upon a printed form, is signed by Adler Edmiston, with the typed signature beneath it "Adler Edmiston, Trustee". It is in the principal amount of $50,000, payable to the plaintiff at Huron, South Dakota, with interest at 2%, and with the usual provisions for attorneys fees, etc. Additionally, on March 10, 1953, Edmiston prepared, signed and delivered to Wollman the following letter (Ex. 5):

"This letter will give Mr. Gordon B. Butterfield of Billings, Montana, the authority to issue 25,000 shares of Wymotex Oil Company of Billings, Montana, stock which is owned by Mr. Butterfield and me and which is to be placed in escrow in a bank to be named by you to satisfy the $50,000.-00 furnished us in San Patricio County, Texas."

As stated, Head was not present at this meeting of March 10, 1953, held in his office. However, on the day before, and contemplating his absence, he had prepared and signed a letter to Wollman (Ex. 2), which is set out verbatim:

"It is my understanding that Gordon Butterfield, A. Edmiston, you and I are all agreeable on the deal in San Patricio County, Texas, and that you have a note for $50,-000.00 to be signed by Butterfield, Edmiston and myself.

"I have to leave town and set on a well in Eastland County, Texas. This letter will give you authority to close any deal with Mr. Edmiston and I will sign the note with Messrs. Edmiston and Butterfield at any time."

It is the plaintiff's testimony, and theory, that under the agreement he was to be repaid, if the venture was unsuccessful, by the two defendants and Butterfield, and that the note evidences that obligation. He contends further that the Wymotex stock was security, to which he might look for satisfaction of the note, if Edmiston, Head and Butterfield otherwise were unable to pay it.

In addition to such support as this theory may find in the written instruments, Butterfield corroborates the plaintiff's testimony in every particular. He readily, almost eagerly, admits his own liability, and that of the two defendants. In this respect it is noted that Butterfield was not made a party-defendant here; that he and the plaintiff were friends and successful co-adventurers in other matters long before this controversy arose; and, that Butterfield is a recent bankrupt.

Head and Edmiston testify that the agreement was not as stated above, or as the written instruments would tend to show. It is their testimony that Wollman was to risk his capital, and they their time and skill in undertaking to make the well produce; and that in the event of failure all were to lose, and that there was to be no repayment. Their testimony is to the effect that the note was never intended to constitute a personal obligation on their part, but was no more than a memorandum of the amount which Wollman advanced, and to which he was entitled to recoupment from the first oil produced. They explain the Wymotex letter as an alternative defense, in that if

Wollman was to be repaid in case of failure, he was to look only to the 25,000 shares above mentioned. This stock was then jointly owned by Edmiston and Butterfield, and had a value of some $2 a share. Since that time, its value has decreased to an extent that it now has little, if any, market value. During the trial, Edmiston indicated his willingness to surrender his share of such stock to Wollman, which he contends would satisfy the obligation.

I find the facts to be in accordance with the plaintiff's theory and testimony. I find that it was the understanding of all parties that Wollman was to be repaid in the event the well was a failure, and that the note was intended to, and did, evidence this obligation. I find further that the block of Wymotex stock was intended simply to secure the payment of the obligation, but was not intended to be the sole source to which plaintiff might look for such satisfaction.

The plaintiff may not recover against Head *as a maker of the note*, by reason of the terms of Article 5932, § 18, Vernon's Annotated Civil Statutes of this State. I find, however, that Head intended to, and by his letter of March 9, 1953 (Ex. 2) did, in writing, authorize Edmiston, as his agent, to deal with Wollman and to bind him (Head) upon any contract so arrived at. I find that Edmiston was authorized to, and did, act as agent for Head, as well as on his own behalf, in executing the "Memorandum of Agreement" (Ex. 3), and that Head is bound thereby. I find further that the "Memorandum of Agreement" did no more than reduce to writing the oral understanding previously arrived at between the parties, and to which Head had assented on or before March 9, 1953.

I find that Edmiston, Head and Butterfield were not acting as partners in this venture (as contended by plaintiff), and I find that Head did not intend to authorize Edmiston to execute the promissory note (as distinguished from the written contract) as Head's agent. It was contemplated by all concerned that Head and Butterfield would sign individually, and on their own behalf, and that the three would constitute joint makers. While the statute cited above would prevent recovery against Head as maker of the note, it does not prevent recovery for breach of the initial contractual obligation, or for breach of his written promise to sign the note as maker. Head's liability in this respect is clear.[1]

The defendants contend that the note was ineffective in that it was delivered to Wollman upon two conditions subsequent, which were not met. First, it is contended that Butterfield and Head were to join as makers, and secondly that the note was to be escrowed with the block of Wymotex stock. While I find that it was contemplated by the parties that these transactions would follow, I find that it was never the contemplation of the parties that these constituted conditions to the validity or the sufficiency of the note. Had Head and Butterfield joined in execution of the note, the three would have been liable jointly and severally, and the plaintiff might have sought his recovery in full against any or all.[2] Hence, Edmiston, who did sign, has not suffered. Clearly the escrow provision was intended purely as a means of affording the plaintiff additional security. If he elected to abandon it, the defendants are in no position to complain. The plaintiff furnished the money, which was to constitute his only obligation, and the defendants enjoyed the fruits thereof. They may not avoid their obligation under the contract because other provisions for the plaintiff's benefit were not carried out.

1. 6 Tex.Juris., Bills & Notes, § 36 and § 116; 10 C.J.S. Bills and Notes § 516; *Kelley v. Audra Lodge*, Tex.Civ.App.1915, 176 S.W. 784; *Wood v. Key*, Tex.Civ. App.1923, 256 S.W. 314.

2. *Beitel v. Beitel*, Tex.Civ.App.1937, 109 S.W.2d 345; *Watkin Music Co. v. Basham*, 1908, 48 Tex.Civ.App. 505, 106 S.W. 734; *Kuykendall v. Coulter*, 1894, 7 Tex.Civ.App. 399, 26 S.W. 748.

The defendant Head contends that if he is not liable upon the note, then he might only be liable upon an oral agreement, as for money had and received, and that the two year statute of limitations of this State would apply (Article 5526, Vernon's Annotated Civil Statutes). Head's liability, however, as above noted, is predicated upon the written agreement signed by Edmiston as his agent, or upon Head's letter to Wollman of March 9, 1953. Actions of this character come within terms of the four year statute (Article 5527, Vernon's Annotated Civil Statutes).[3]

Objection was made to the introduction in evidence of Butterfield's note to Wollman, written in Mineral Wells (Ex. 1). There is no showing that Butterfield was authorized to make an agreement for and on behalf of Edmiston and Head, and Ex. 1 is not binding upon the defendants in a contractual sense. The objection to that effect is well taken, and is sustained. The memoranda may be received in evidence, and considered, as tending to show the terms of the proposal as originally submitted to Wollman by Butterfield, and is considered only for this limited purpose. Admittedly, the notations made on the bottom of this memoranda by the plaintiff Wollman are self-serving and inadmissible, and they have not been considered.

Objection was made by the plaintiff to all of the oral testimony of Edmiston and Head as to their understanding of the over-all agreement between the parties, on the theory that it tended to contradict the terms of the several written instruments. Construing the instruments together, I consider them to be somewhat ambiguous, and that parol evidence is admissible at least to explain the ambiguities. While I have some doubt as to the admissibility of some of the testimony of Edmiston and Head by reason of this objection,[4] I have resolved the doubt in their favor, and have considered and weighed all of the testimony which they gave. I find it insufficient to convince me that theirs is the correct version of the matter.

It follows that the plaintiff may recover against the defendant Edmiston for the principal, interest and attorneys fees, as provided by the note; he may recover against the defendant Head the amount of $50,000, as damages for breach of contract.

The foregoing is adopted as findings of fact and conclusions of law.

Clerk will notify counsel.

Counsel for plaintiff will submit decree promptly.

3. See for example, Hester & Wise v. Chinn, Tex.Civ.App.1942, 162 S.W.2d 450; Cowart v. Russel, 1940, 135 Tex. 562, 144 S.W.2d 249; Shaw v. Bush, Tex. Civ.App.1933, 61 S.W.2d 526 (Writ Ref.).

4. See, for example, Chalk v. Daggett, Tex.Com.App.1924, 257 S.W. 228; McCormick & Ray, Texas Law of Evidence, § 1643.